1  PATRICK D. ROBBINS (CABN 152288)
   Acting United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  IVANA DJAK (NYBN 5516687)
   NICHOLAS M. PARKER (CABN 297860)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       Email: Ivana.Djak@usdoj.gov
8              Nicholas.Parker3@usdoj.gov

9
   Attorneys for United States of America
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-CR-281-WHO |
| Plaintiff, | **UNITED STATES' TRIAL MEMORANDUM** |
| v. | |
| ALEXANDER BULAZO, | Pretrial Conference: March 31, 2025 \| 2:00 p.m.<br>Trial Date: April 21, 2025<br>Courtroom: Courtroom 2, 17th Floor |
| Defendant. | Judge: Hon. William H. Orrick |

In accordance with the Court's Standing Order for Criminal Cases and the Court's Amended Pretrial Order (Dkt. 55), the government hereby submits its Trial Memorandum.

## I. LEGAL BASIS FOR THE CHARGES

Defendant Alexander Bulazo is accused of embezzling or converting approximately $2.1 million from City Baking Company's Profit-Sharing Pension Plan (the "Plan"). A jury trial is scheduled to start on April 21, 2025, and is expected to span about seven trial days.

The indictment charges one count of theft or embezzlement from an employee pension plan, in violation of 18 U.S.C. § 664. *See* Dkt. 1. Section 664 provides:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.
>
> As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

18 U.S.C. § 664.

To prove a violation of Section 664, the United States must prove that (i) the Plan was established or maintained as an employee pension benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"); and (ii) the Defendant either (a) willfully embezzled [or willfully stole] funds of the plan; or (b) unlawfully and willfully [abstracted or] converted funds of the plan to his own use or the use of another. To prove that the Defendant acted "unlawfully and willfully," the government must show that he acted (1) with a fraudulent intent, *or* a bad purpose, *or* an evil motive; *and* (2) with the voluntary intent to violate a known legal duty. *See United States v. Eriksen*, 639 F.3d 1138, 1150 (9th Cir. 2011); *United States v. Andreen*, 628 F. 2d 1236, 1241–43 (9th Cir. 1990); *United States v. DeMint*, 661 F. App'x 484, 487 (9th Cir. 2016). An intent to defraud is an intent to deceive and cheat. *See United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).

It is not a defense to the charged offense that the Defendant intended to repay any funds that were embezzled, abstracted, or converted—or that he in fact repaid such funds. *See Eriksen*, 639 F.3d at 1150; *United States v. Wiseman*, 274 F.3d 1235, 1241 (9th Cir. 2001). Nor is it a defense that the Defendant believed that his actions would benefit the plan's participants. *See Wiseman*, 274 F.3d at 1240; *United States v. Mett*, 178 F. 3d 1058, 1067–68 (9th Cir. 1999).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Defendant was president and owner of the City Baking Company, a wholesale bakery in San Francisco. The Defendant used his position as a trustee of City Baking's Profit-Sharing Pension Plan to embezzle about $2.1 million from the Plan between 2017 and 2020.

Kathleen Keppinger founded City Baking in the early 1990s. The Defendant started working at City Baking as a delivery driver in 1995. By 2009, he was Chief Operating Officer and had acquired a 10% stake in the company from Ms. Keppinger. In September 2017, the Defendant acquired Ms. Keppinger's remaining 90% stake and became sole owner of City Baking.

The Defendant and Ms. Keppinger established the Plan on January 1, 2005. The Plan was a defined-contribution, profit-sharing plan established to provide participants and beneficiaries with income for retirement. The Defendant and Ms. Keppinger were the Plan's "Individual Trustees" until 2017. In September 2017, when the Defendant became sole owner of City Baking, Timothy Lane replaced Ms. Keppinger as an Individual Trustee.

When the Defendant and Ms. Keppinger established the Plan, they hired Embarcadero Financial Group as the Plan's "non-discretionary" investment manager; the Plan's funds were placed in trust with Embarcadero. They also hired a firm that came to be called the Newport Group as the Plan's third-party administrator ("TPA"), which provided administrative services for the Plan.

From July 2017 to November 2020, the Defendant routinely transferred Plan funds to, and commingled those funds with funds already in, his personal accounts and City Baking's accounts. He used Plan funds to pay personal, company, and Plan expenses. The Defendant transferred about $761,000 from the Plan to City Baking's payroll and business operating accounts. He transferred an additional $504,000 to his personal bank account. He took a $500,000 "loan" from the Plan in July 2017 to finance his buyout of Ms. Keppinger's stake in City Baking. And he withdrew about $369,000 in cash and checks from the Plan. He used those funds for a variety of purposes, including to make payments on his personal credit cards to pay off expenses for various non-business-related items, such as an Xbox, airline tickets, shoes, fantasy football, and Ticketmaster purchases, to name just a few.

The Defendant engaged in hundreds of prohibited transactions despite repeated warnings from the Plan's TPA. For example, in September 2017, a Newport employee, Daniele Shimonauff, warned

the Defendant that the "IRS is not okay with money being transferred back and forth between the plan's accounts and the company's accounts. They view this as the company 'borrowing' money from the [P]an, which is a prohibited transaction (by law)." The following month, Newport sent the Defendant a letter again warning against prohibited transactions. In January 2019, after City Baking had failed to pay Newport for services rendered, Newport resigned as City Baking's TPA and warned the Defendant a third time that transfers between and commingling of company and plan assets "is not allowed by law."

On several occasions, the Defendant told Newport and Embarcadero that he was accessing Plan funds to make "payouts"—a permitted use of pension plan funds. Bank records show that was untrue: the Defendant typically did not use Plan funds for payouts; rather, he transferred Plan funds to corporate and personal accounts and used them for impermissible purposes.

During the period at issue in this case, the Defendant transferred about $1.3 million back into the Plan, leaving a balance of about $820,000 in missing funds as of December 2020. Only after the U.S. Department of Labor's ("DOL") Employee Benefits Security Administration ("EBSA") initiated an investigation (in May 2019) did the Defendant agree to forfeit his own Plan balance of $420,370 and to pay $705,405 back to the Plan in July and August 2021.

The government anticipates the Defendant will seek to contextualize (or excuse) his conduct by pointing to two loans Ms. Keppinger took from the Plan as investments for City Baking in 2011 ($177,000) and 2012 ($286,000). The government further anticipates the Defendant will claim he lacked the intent to commit the charged offense as evidenced by the fact that he frequently used misappropriated Plan funds to cover business expenses, including payroll.

The Defendant's self-dealing ultimately caused a liquidity crisis for City Baking, led Newport to resign, and resulted in failures to timely file required annual reporting forms with DOL. In the end, the Defendant put his employees' pensions at risk to save *his* company, principally benefiting *him*.

In July 2022, a federal grand jury empaneled in the Northern District of California returned an indictment charging the Defendant with one count of theft or embezzlement from an employee pension plan, in violation of 18 U.S.C. § 664. *See* Dkt. 1.

NO. 22-CR-281-WHO

## III. THE EVIDENCE

The government will rely primarily on documentary evidence and testimony.

The government intends to introduce (i) the Plan's governing documents, including adoption agreements with Newport (and its predecessors); (ii) the Plan's Annual Reports (each one a "Form 5500") signed and submitted by the Defendant in his capacity as Plan trustee; (iii) bank records—including summary charts of the same—reflecting the Defendant's improper money transfers to and from, and cash withdrawals from, the Plan's accounts, into City Baking accounts and his personal accounts; (iv) prior statements the Defendant made in email communications with his TPA at Newport and investment advisors at Embarcadero, as well as the Defendant's statements made during DOL's investigation; (v) emails to the Defendant from Newport and Embarcadero staff; (vi) documents related to Newport's preparations of City Baking's Form 5500s; and if necessary, (vii) promissory notes related to the loans Ms. Keppinger took from the Plan in 2011 and 2012, as well as communications between the Defendant and Ms. Keppinger.

The government also intends to rely on the testimony of several witnesses, including two DOL Investigators involved in the investigation of the Defendant. One is expected to testify to, among other things, the Defendant's engagement in prohibited transactions, as reflected in the bank statements and/or summary charts. The other is expected to testify to the Defendant's admissions made during the DOL civil investigation.[1] The government expects to call a DOL employee familiar with the procedures by which DOL received City Baking's Form 5500s, as well as the content of those Form 5500s. The government also intends to call as witnesses employees of Newport and Embarcadero Financial who worked with the Defendant to administer the Plan. The government intends to call Ms. Keppinger to testify about the establishment and management of the Plan. Finally, the government expects to call a DOL employee as an expert on pension plans and how they are regulated by DOL through the ERISA framework.

---

[1] To re-emphasize the government's eighth motion *in limine* (*see* Dkt. 64 at 15–17), the defendant may not offer his own prior out-of-court statements for their truth, even through his own testimony at trial, unless those prior statements either are not hearsay or fall within an established exception to the rule against hearsay. *See* Fed. R. Evid. 801(d)(1), 803; *United States v. Ortega*, 203 F.3d 675, 681–83 (9th Cir. 2000).

The government also reserves its right to call one or more witnesses to authenticate bank statements, although the government expects that the parties will eventually reach a stipulation to obviate the need for such testimony.

## IV.   EVIDENTIARY, PROCEDURAL, AND ANTICIPATED LEGAL ISSUES

The parties met and conferred on March 20, 2025, to discuss evidentiary and other issues.

The parties do not anticipate issues regarding admissibility of any exhibits that are not subject to objections or addressed by pending motions *in limine* or raised in the parties' concurrently filed joint Pretrial Conference Statement.  Both parties reserve the right to object for lack of foundation at the time of testimony.  The government summarizes outstanding issues that the parties have not resolved below.

*Evidentiary Issues*

First, the Defendant has not noticed any exhibits that he intends to admit.  The government reserves its right to object to any exhibits that were not noticed by the defense in advance, as contemplated in the Court's Order Regarding Pretrial Deadlines.  *See* Dkt. 57.

Second, in his objections to the government's exhibit list and in the joint Pretrial Conference Statement, the defense notes that the government has produced an updated exhibit list, and objects to further updates to the government's exhibit list.  In a case involving thousands of pages of discovery; the government filed an initial exhibit list comprising 205 exhibits one week ago.  Since then, the government has circulated an amended exhibit list to correct a few clerical errors and to add about 30 short new exhibits, many of which are continuations of email chains already noticed in the government's initial list.  The government did not re-number its exhibits, and several of the "new" exhibits were on the initial list but have been added under a new exhibit number to correct clerical errors.  The government will serve electronic copies of the new exhibits on the defense this week and expects to have any summary charts produced by the end of this week as well.  Moreover, the defense has long been in possession of the bates-stamped discovery comprising the exhibits, and any summary charts will pertain to bank statements that were listed on the government's initial exhibit list.

The Court has supervisory power to manage effective trial presentations and to order the pretrial disclosure of exhibit and witness lists, as it has done in this case.  *See United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008).  The Court accordingly also has the authority to allow parties to make

GOVERNMENT'S TRIAL MEMORANDUM            6
NO. 22-CR-281-WHO

reasonable amendments after preliminary lists are submitted, *see United States v. Losch*, No. 19-CR-294, 2019 WL 6524874, *5 (D. Nev. Dec. 4, 2019) (stating that the government "may reasonably update its exhibit list in good faith as needed" after submitting a preliminary exhibit list), and to prevent trial by ambush where the parties make amendments unreasonably late and in bad faith, *see United States v. Romero-Lobato*, No. 18-CR-47, 2020 WL 557523, *2–3 (D. Nev. Feb. 4, 2020) (excluding defendant's exhibits reflected on modified exhibit list submitted the morning of trial as prejudicial to the government). The government again reserves its right to reasonably amend it exhibit list, before and during trial, as necessary, and will notify defendant and the Court of any changes to its exhibit list. And of course, the Court can make decisions regarding admissibility or exclusion on a case-by-case basis, taking into account, among other things, the probative value of the evidence and any prejudice to either party.

The remaining evidentiary disputes are outlined in the parties' *in limine* motions. *See* Dkts. 61 [defense MILs]; 64 [government MILs].

*Legal Issues*

The parties have exchanged proposed *voir dire* and jury instructions and have reached agreement as to most issues except the instructions applicable to the substantive offense in this case, for which there are no model instructions. To that end, one unresolved dispute relates to the parties' disagreement about how to instruct the jury on the elements of a Section 664 offense, as discussed in greater detail in the joint proposed jury instructions submitted by the parties. The government relies principally on the Ninth Circuit's articulation of the elements of a Section 664 offense in *United States v. Eriksen*, 639 F.3d 1138 (9th Cir. 2011), *United States v. Andreen*, 628 F. 2d 1236, 1241–43 (9th Cir. 1990), and *United States v. DeMint*, 661 F. App'x 484 (9th Cir. 2016). The government also relies on three relatively recent sets of jury instructions given in Section 664 cases by district courts in the Ninth Circuit and attaches those instructions hereto for the Court's convenience. *See* Ex. A (*United States v. DeMint*, No. 12-CR-85-VAP, ECF. No. 44 (C.D. Cal. Mar. 14, 2014)); Ex. B (*United States v. Eriksen*, No. 2:08-CR-404-JCC, ECF. No. 105 (W.D. Wash. Oct. 14, 2009)); Ex. C (*United States v. Urie*, No. 06-cr-00027-LRH, ECF No. 66 (D. Nev. June 23, 2008)). The parties' disputes on the instructions extend, too, to matters including what activities are *not* a defense to the crime charged (intent to repay

GOVERNMENT'S TRIAL MEMORANDUM          7
NO. 22-CR-281-WHO

embezzled or converted funds; intent to benefit plan participants via embezzlement or conversion), as well as the defendant's request that the Court give a good-faith defense instruction. These disputes are discussed in greater detail in the parties' proposed jury instructions and summarized here.

The Ninth Circuit has repeatedly and consistently held that a defendant's subjective intent to repay misappropriated funds and/or to make fraud victims whole "is not a defense to embezzlement" or conversion. *Wiseman*, 274 F.3d at 1241 (citing cases); *cf. United States v. Bowman*, 81 F. App'x 104, 106 (9th Cir. 2003) (stating, in a mail-fraud case, that "intent to repay fraudulently obtained funds is not a defense"); *see also United States v. Stockton*, 788 F.2d 210, 219 (4th Cir. 1986) ("Embezzlement is not excused by restitution of goods or services of equivalent value."); *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir. 1985) ("[I]t is irrelevant to a charge of embezzlement that the embezzler intended to return the money he embezzled—or even that he did return it."). In this case, the Defendant has noticed several DOL witnesses and is likely to point to his repayment of funds to the Plan to try to negate his guilt in this case. An instruction making clear that repayment is not a defense is necessary to avoid misleading the jury. It is also not a defense to embezzlement that a defendant used misappropriated funds for purportedly benign purposes. The Ninth Circuit has repeatedly affirmed convictions under 18 U.S.C. § 644 where, as here, defendants improperly accessed and used pension plan funds "to prop up their failing business." *Eriksen*, 639 F.3d at 1150; *see also Mett*, 178 F.3d at 1060–61 (defendants withdrew funds they "characterized … as 'loans' necessary to carry [the company] through rough financial times" and designed "to benefit their employees"). Here, the Defendant may point to his use of Plan funds to make City Baking payroll and to cover its operation costs to argue that he was just trying to keep the company afloat and keep plan participants employed. An instruction that the Defendant's allegedly benevolent intent is not a defense is likewise necessary to avoid misleading the jury.

As for the Defendant's request that the Court issue the jury a good-faith defense instruction, the government objects on multiple grounds. *First*, the question whether to issue a good faith instruction is not yet ripe. The Defendant's proposed instruction relates to his theory of the case—that he did not have the requisite criminal intent because he acted in good faith. *See Bowman*, 81 F. App'x at 107 (good faith instruction goes to the defendant's theory of the case). Such theory-of-the-case instructions are appropriate, if at all, only "if the evidence sufficiently supports the theory and the theory is supported by

GOVERNMENT'S TRIAL MEMORANDUM                8
NO. 22-CR-281-WHO

law." *United States v. Sommerstedt*, 752 F.2d 1494, 1496 (9th Cir. 1985), *amended by* 760 F.2d 999 (9th Cir. 1985).  *Second*, no good faith instruction is required under Ninth Circuit law, provided the jury is adequately instructed on intent.  Indeed, there is no good faith instruction in the Ninth Circuit's Model Criminal Jury Instructions, which state explicitly that the Ninth Circuit's recent ruling in *United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020), did not affect a prior case's holding that "'no good faith instruction [is] necessary at all'" where a jury is properly instructed regarding intent to defraud.  Ninth Cir. Model Jury Instr. No. 4.13.  *Third*, and alternatively, if the Court is inclined to instruct the jury on good faith, it should issue the instruction approved by the Ninth Circuit in *United States v. Molinaro*, which is more limited and legally sound:

> You may determine whether [the] defendant had an honest, good faith belief [that his actions as alleged in the indictment were permissible] in determining whether or not the defendant acted with intent to [commit the charged offense]. However, a defendant's belief that the victims of the [crime] will be paid in the future or will sustain no economic loss is no defense to the crime.

11 F.3d 853, 863 (9th Cir. 1993) (citations omitted).

As mentioned above, the parties met and conferred on March 20, 2025.  The parties will continue to seek to resolve factual and legal disputes before trial and hope to have a number of stipulations to submit for the Court's consideration in due course.

DATED:  March 24, 2025                                          Respectfully submitted,

                                                                PATRICK D. ROBBINS
                                                                Acting United States Attorney

                                                                 /s/
                                                                IVANA DJAK
                                                                NICHOLAS M. PARKER
                                                                Assistant United States Attorneys